ELLIS, Judge.
On May 19, 1955 a truck owned and operated by Anderson-Dunham, Inc., was engaged in delivering concrete to a construction job being performed by Caldwell and McCann when it backed onto the foot of an employee of the latter company, and the plaintiff as the compensation insurer of Caldwell and McCann paid to this employee, viz., George Moses, the sum of $1,855.65. The plaintiff in this suit is seeking to recover of the defendant, the public liability insurer of Anderson-Dunham, Inc., this sum.
The case was duly tried and based upon a finding of fact that the driver of the Ander *293 son-Dunham, Inc., truck could and should have seen George Moses and that his failure to do so constituted the proximate cause of the accident, judgment was therefore rendered in favor of the plaintiff as prayed for from which the defendant has appealed.
Defendant, in his brief, admits that should this court reverse our learned brother below that it would be necessary for us to find that he was manifestly erroneous in his appreciation of the facts.
On the date of the accident Caldwell and McCann, General Contractors, were engaged in the construction of the Youth Center for the First Presbyterian Church of Baton Rouge, La. On this day they were engaged in the process of pouring the concrete for the dividing wall. The north wall facing on Convention Street had not been constructed and afforded ingress and egress for trucks hauling material. The floor of the building had not been laid and on the day in question the dirt was very soft. The ready-mix concrete truck of Anderson-Dun-ham, being driven by its employee, Alcee Jackson, was backed through the north opening to a point near the southwest corner of the dividing wall where it unloaded part of the freshly mixed concrete load. As the concrete is poured from the mixer on top of the truck it is necessary that it be packed or tamped and in order to do this Caldwell and McCann used a machine called a vibrator mounted on wheels in the nature of a wheelbarrow and which weighed in the neighborhood of one hundred pounds, and it was this machine which George Moses was charged with the duty of moving about on the job as concrete was poured one place or another. After a portion of the load of concrete had been poured in the southwest corner, the truck pulled forward in order to back into a point further to the east and nearer the center of the proposed dividing wall. George Moses then pushed the vibrator toward the same point in order to place it in position so that when the concrete was unloaded it could be tamped. The preponderance of the testimony shows that in order to do this Moses rolled the vibrator in a southeasterly direction which would have placed his left side to the backing truck, as it was backing practically due south. .
M. L. Simpson, job superintendent for Caldwell and McCann, testified that Moses pushed the vibrator approximately ten feet too far east and as a result placed himself in the position where the left rear dual wheel of the concrete mixer truck struck him and ran on his left foot. Simpson further testified that the vibrator had to be moved and in position next to the concrete mixer truck before concrete could be poured, and that the truck drivers were generally familiar with this fact. As to whether or not the driver of the Anderson-Dunham truck could have seen George Moses, Simpson testified as follows:
“Redirect Examination By Mr. Kleinpeter: Q. Mr. Simpson, one other question. Was there any obstruction to your knowledge on the left side of that truck as it was backing up in between the driver and George Moses ? Would you answer that?
“A. None whatsoever.
“Q. None whatsoever. And if the driver had looked out to his left there would have been no obstruction there to have marred his view of anything moving to his left rear, is that correct ?
“A. None whatsoever.”
While the testimony varies somewhat it is clear that on the day in question Caldwell and McCann had furnished an employee named Bell to direct the operator of the concrete mixer truck in its backing while on the job. Bell was standing out to the left of the backing truck flagging directions to the driver as to when to back and when to stop. On the day of the trial it was impossible to obtain Bell’s testimony so a statement was placed in the record which is to the effect that he was performing flagging duty on the day of the accident. While his statement is not too satisfactory, for one thing he was of the opinion evidently that *294 Moses was injured when the truck first backed in the southwest corner, when as a matter of fact, he was injured when the truck pulled up and then backed due south to unload its second portion of concrete. Bell stated that the vibrator was sitting off to the left of the truck as it was backing up and Moses was standing behind the vibrator, and that Moses must have thought the vibrator was going to get run over and he jumped in between the handles “when I had my head turned,” and when Bell looked back to the truck he saw the truck wheel just a couple of inches from Moses’ foot and yelled but the truck rolled on his foot at the same instant. Bell made the following significant statement which seems to tie in with the testimony of the driver of the concrete mixer truck, supra: "The driver could not have seen the man because he was watching me and he had to depend on me for signals.” The driver of the concrete mixer truck, when he started to back, opened his left door, and put his head out the door and looked toward Bell. From the testimony it appears that the driver of the concrete mixer truck and Bell, the flagman, were paying attention only to each other and depending on third parties taking care of themselves.
Counsel for defendant in his brief argues ' as follows :
“* * * if Moses and the vibrator were behind and to the left of the truck, as Bell said they were, but in such close proximity that Moses thought the truck might strike the vibrator, it goes without saying that Bell was several feet further out to the left of the large truck and inasmuch as Jackson’s vision was focused on Bell he could not have seen straight back along the left side of the truck. Under those circumstances and because of the size of the truck, there is no way he could have seen Moses and we submit it was manifestly wrong for the trial court to conclude Jackson could and should have seen him. This record clearly shows that because of the large and bulky size of the truck and the close quarters in which it was being operated, Jackson was slowly backing the truck with his left door open looking directly at Bell, which was the customary, proper and safe way of handling the operation.”
We cannot agree with counsel’s argument as this record fails to reveal any obstruction whatsoever to the view of the driver or the flagman Bell insofar as Moses was concerned. Moses was on the left of the truck in plain view if they had looked to see where he was. The mere fact that Jackson’s vision was focused on Bell did not prevent him from being able to see along the left side of his truck if he had looked and he was under a clear duty to look to see Moses so as to avoid backing into him. The size and bulk of the truck did not prevent the driver from seeing Moses as he was never squarely behind the truck but always to the left until after the truck had struck him and knocked him down.
The quarters in which the truck was being backed were not so close as to prevent the driver from seeing Moses had he looked. The driver of the concrete mixer truck could'not shift his responsibility of seeing persons in plain view and in a perilous position.
Counsel for plaintiff and defendant both cite and discuss the case of DeRoode v. Jahncke Service, Inc., La.App., 52 So.2d 736, however, this case is easily distinguishable on the facts alone. In this case the injured party was on the right or blind side of the truck so that the driver could not possibly have seen him.
Counsel for the defendant further contends that Moses was guilty of contributory negligence, however, this is immaterial in this case as the driver of the concrete mixer truck could and should have seen Moses in a perilous position in time to have stopped the truck and avoided the accident. The driver had the last clear chance. The mere fact that Caldwell and *295 McCann furnished a flagman or spotter for the purpose of instructing the operator of the concrete mixer truck where to back the truck so as to pour the concrete, did not relieve the operator of the truck of his primary duty not to negligently run into or strike a third party plainly within his view.
We are of the opinion that the judgment of the district court is not manifestly erroneous and it is therefore affirmed.